# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01624-NYW

REBECCA M. SCULL,

    Plaintiff,

v.

CHAD F. WOLF, Acting Secretary,
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
TRANSPORTATION SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

This matter comes before this court on Defendant Chad F. Wolf, Acting Secretary of the U.S. Department of Homeland Security, Transportation Security Administration's ("TSA" or "Defendant") Motion to Dismiss Plaintiff's Complaint Under Rule 12(b)(1) ("Motion to Dismiss for Lack of Jurisdiction" or "Motion to Dismiss") [#18, filed August 10, 2020]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order Referring Case dated August 14, 2020 [#23]. This court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, having reviewed the Motion, associated briefing [#25, #26], and applicable case law, this court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES** this matter with prejudice for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

Plaintiff Rebecca M. Scull ("Plaintiff" or "Ms. Scull"), a former TSA employee, initiated this action pro se by filing her Complaint in the United States District Court for the District of Colorado on June 4, 2020, asserting five claims against her former employer stemming from the

TSA's allegedly discriminatory and retaliatory conduct on the basis of Plaintiff's disability.[1]  *See* [#1].  The court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motion.[2]

Ms. Scull suffers from pseudo tumor cerebri/idiopathic intracranial hypertension ("PTC/IIH"), post-traumatic stress disorder ("PTSD"), and anxiety.  [*Id.* at 4].  She disclosed these disabilities to TSA when she first applied for a position with the agency in December 2015.  [*Id.* at 5].  After Ms. Scull's employment application was initially denied by TSA, upon additional medical investigation and documentation, the agency ultimately hired Ms. Scull as a Transportation Security Officer ("TSO") at Denver International Airport in August 2016.  [*Id.* at 5–6].

Roughly five months later, Ms. Scull began to take leave from her TSO shifts due to her disabling medical conditions.  [*Id.* at 5].  These medical conditions resulted in two hospitalizations for Ms. Scull in December 2016.  [*Id.* at 6].  Having missed shifts she was otherwise scheduled to

---

[1] Because Plaintiff appears *pro se*, the court "review[s] [her] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  Consistent with this principle, at times, the court will quote from Ms. Scull's filings without the use of [sic] or the correction of spelling or syntax.  However, the court applies the same procedural rules and substantive law to Plaintiff as to a represented party.  *See Murray v. City of Tahlequah,* 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

[2] Defendant states that its challenge to this court's subject matter jurisdiction is "primarily facial" and "only a factual challenge to the extent that there is any question as to the authority under which Plaintiff was appointed." [#18 at 6 n.4].  Jurisdictional challenges brought under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual.  For a facial attack the court takes the allegations in the Complaint as true; for a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts.  *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)).  Because Plaintiff does not challenge the authority under which she was appointed, *see generally* [#25], this court treats Defendant's Motion as a facial attack.  Accordingly, the court presumes the truthfulness of the allegations set forth in the Complaint.

work, Ms. Scull applied to and was rejected by TSA's Voluntary Leave Transfer Program ("VLTP"). [*Id.* at 7]. Relevant here, the VLTP allows TSA employees to utilize paid sick leave donated by other employees. [*Id.*]. In rejecting Ms. Scull's December 2016 VLTP application, the TSA offered her no explanation for its decision. [*Id.* at 8]. Around this time, a TSA Manager contacted Ms. Scull, requesting further medical documentation to explain her absences and warning her that she could "not call out sick from work just because [she] had a headache." [*Id.* at 6]. Shortly thereafter, two more TSA Managers contacted Ms. Scull to express concern over her ability to perform her duties as a TSO and recommend that she resign. [*Id.* at 6–7].

Ms. Scull's medical problems persisted in 2017, causing at least one additional hospitalization and recurring absences from work. [*Id.* at 8]. Ms. Scull returned to light duty in February 2017 but was marked absent without leave ("AWOL") for shifts missed due to her light duty limitation. [*Id.* at 7]. Shortly after returning to light duty, Ms. Scull experienced another medical setback and was placed on medical leave from work by her neurologist in March 2017. [*Id.*]. Accordingly, Ms. Scull submitted a second VLTP application, and was rejected for a second time. [*Id.* at 8]. The TSA explained that her March 2017 VLTP application was not approved because Ms. Scull had failed to submit "administratively acceptable" medical documentation, and instructed her to submit a third application with appropriate medical documentation.[3] [*Id.* at 9].

Ms. Scull returned to "full duty" in May 2017 but, soon thereafter, was subsequently hospitalized and ultimately required surgery. [*Id.* at 8]. Ms. Scull was unable to work while she recovered from the surgery, and was thus forced to miss weeks of work. [*Id.*].

---

[3] Ultimately, Ms. Scull never received approval to participate in or benefit from the VLTP. [#1 at 9].

On June 30, 2017, Ms. Scull again returned to her TSO position "full duty." [*Id.* at 10]. However, her medical conditions prevented her from reporting to work again in August 2017. [*Id.* at 11]. The TSA subsequently sent Ms. Scull a letter "reprimanding [her] for all the accumulative time [she] had taken off work for medical leave," requesting medical documentation regarding her "specific diagnosis and the way it affects [her]," and warning her that continued absences could lead to her termination. [*Id.* at 11–12].

On September 4, 2017, Ms. Scull was placed on a leave restriction, whereby she "was not allowed to take any form of leave from work for any reason." [*Id.* at 13]. Seven weeks later, Ms. Scull contacted TSA Human Resources regarding her concerns that she had not received an "E-band" promotion and pay increase typically triggered for TSOs upon completion of one year working for the TSA. [*Id.*]. Specifically, Ms. Scull asked Human Resources staff to apply the promotion and pay increase retroactively, with an effective date of August 21, 2017, to reflect the one-year anniversary of her employment with TSA. [*Id.* at 13–14]. TSA denied this request, citing the number of shifts for which Ms. Scull had been recorded AWOL as grounds for its decision. [*Id.* at 14].

On November 14, 2017, Ms. Scull informed the TSA that she would be absent from work despite her leave restriction. [*Id.*]. TSA subsequently removed Ms. Scull from her position with the agency on November 20, 2017. [*Id.*]. Upon her termination, Ms. Scull filed a grievance with the Equal Employment Opportunity Commission ("EEOC") and this action followed.

**PROCEDURAL BACKGROUND**

Believing Defendant's conduct violated the Rehabilitation Act, 29 U.S.C. § 791, Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Family Medical Leave Act, 5 U.S.C. §§ 6381, *et seq.*, 29 U.S.C. §§ 2601, *et seq.*, and proceeding pro se, Ms. Scull

4

filed her Complaint in the United States District Court for the District of Colorado on June 4, 2020, naming the Acting Secretary of the U.S. Department of Homeland Security, Transportation Security Administration as a Defendant. *See* [#1]. In her Complaint, Ms. Scull asserts a claim for violation of the Rehabilitation Act against the TSA for failure to promote, termination of employment, different terms and conditions of employment, failure to provide leave without pay, denial of VLTP requests, and listing absences without leave on her employment record ("Claim I") [*id.* at 4–15]; violations of the ADA for failure to accommodate ("Claim II") [*id.* at 16], retaliation ("Claim III") [*id.* at 17], and hostile work environment ("Claim V") [*id.* at 20]; and interference with and retaliation related to medical leave in violation of the FMLA ("Claim IV") [*id.* at 18].

Defendant filed the instant Motion to Dismiss for Lack of Jurisdiction on August 10, 2020. [#18]. After seeking and receiving an extension of time to respond, [#22, #24], Plaintiff filed her Response to the Motion to Dismiss on September 28, 2020. [#25]. Defendant filed its Reply on October 6, 2020. [#26]. Because the Motion to Dismiss is thus ripe for review, I consider the Parties' arguments below.

## LEGAL STANDARDS

### I.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and, as such, "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1029 (10th Cir. 2014), even in the absence of a challenge from any party, *Image*

*Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006). Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject matter jurisdiction, and a court must dismiss a complaint if it lacks subject matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1147 n.4 (10th Cir. 2015). For a facial attack the court takes the allegations in the Complaint as true; for a factual attack the court may not presume the truthfulness of the Complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *See Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017).

***Sovereign Immunity.*** "It is well settled that the United States . . . [is] immune from suit, unless sovereign immunity has been waived." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989). Sovereign immunity is a jurisdictional bar to suit. *Fed. Dep. Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of sovereign immunity cannot be implied but must be unequivocally expressed," *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotations and citation omitted), and the plaintiff bears the burden of establishing that sovereign immunity has been waived, *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992).

## ANALYSIS

Defendant seeks dismissal of the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See generally* [#18]. In arguing for dismissal, Defendant contends that Congress has not waived sovereign immunity for Plaintiff's claims because neither the Rehabilitation Act nor the FMLA create a cause of action in this case. [*Id.* at 2]. Specifically, the TSA asserts that (a) the Rehabilitation Act is preempted by the Aviation

and Transportation Security Act ("ATSA"), and thus rendered inapplicable to TSA employment decisions; and (b) Title II of the FMLA governs Plaintiff's claims and does not provide for a private right of action against the agency. [*Id.*]. While the Complaint asserts claims pursuant to the ADA, Rehabilitation Act, and FMLA, the instant Motion challenges subject matter jurisdiction with respect to only the latter two federal statutes because, according to Defendant, this court must construe Plaintiff's ADA claims as asserting violations of the Rehabilitation Act. In other words, Defendant argues for dismissal of Claims I, II, III, and V as Rehabilitation Act claims preempted by the ATSA; and dismissal of Claim IV as an unauthorized private cause of action against the United States.

Accordingly, this court must first address whether Claims II, III, and V—which allege violations of the ADA—are properly construed as Rehabilitation Act claims. Defendant contends that Plaintiff's ADA claims must be construed as Rehabilitation Act claims because the ADA does not apply to federal employees. [#18 at 1 n.1]. This court respectfully agrees with Defendant. Although Plaintiff asserts Claims II, III, and V under the ADA, these claims are brought against the TSA and premised on her employment as a federal TSA employee and "the Rehabilitation Act, rather than the ADA, applies to federal employees." *Mattson v. Napolitano*, No. 09-cv-02024-PAB-BNB, 2010 WL 11553697, at *1 (D. Colo. Sept. 15, 2010) (internal citation omitted). *See also Hernandez v. U.S. Postal Serv.*, No. 19-cv-04002-HLT, 2020 WL 2766213, at *4 n.6 (D. Kan. May 28, 2020) ("Although Plaintiff purports to bring his claim for disability discrimination under the [ADA], this claim is properly brought under § 501 of the Rehabilitation Act because Plaintiff is a federal employee and alleges this claim against a federal agency."). Thus, this court construes Plaintiff's pro se Complaint liberally to find that Claims II, III, and V are asserted under the Rehabilitation Act.

With this construction in mind, I turn now to consider whether this court has subject matter jurisdiction over Plaintiff's Rehabilitation Act claims.

## I.     Preemption of Plaintiff's Rehabilitation Act Claims

The TSA argues for dismissal of Claims I, II, III, and IV for lack of subject matter jurisdiction because the Rehabilitation Act is preempted by the ATSA, and thus rendered inapplicable to TSA employment decisions. I turn now to the relevant provisions of the ATSA before considering whether, in light of the same, Congress has waived sovereign immunity for Rehabilitation Act claims against the TSA. Because I find for the following reasons that Congress has not waived sovereign immunity from suit for such claims, I conclude that this court lacks subject matter jurisdiction over Claims I, II, III, and V.

*The Aviation and Transportation Security Act.* Congress enacted the ATSA in 2001, in relevant part to create a federal workforce to screen passengers and their property at commercial airports. 49 U.S.C. § 44935; 147 Cong. Rec. H8262, H8275 (Nov. 16, 2001). Pursuant to § 111(d) of the ATSA, "notwithstanding any other provision of law, the [TSA Administrator][4] may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for [federally employed security screeners]." 115 Stat. at 116, codified as note to 49 U.S.C. § 44935. The ATSA further provides that, "notwithstanding any provision of law," 49 U.S.C. § 44935(e)(2)(A), TSA screeners must "possess basic aptitudes and physical abilities," *id.* § 44935(f)(1)(B), and "meet such other qualifications as the [TSA Administrator] may establish," *id.* § 44935(e)(2)(A)(iv).

---

[4] Because the TSA was originally created as an agency within the U.S. Department of Transportation, the ATSA refers to the "Under Secretary of Transportation for Security." The TSA is now an agency within the U.S. Department of Homeland Security, *see* 6 U.S.C. § 203(2), and thus, the position referenced in § 111(d) of the ATSA is now known as the TSA Administrator, *see* 49 C.F.R. § 1500.3.

*Waiver of Sovereign Immunity for Rehabilitation Act Claims.* Defendant argues that sovereign immunity precludes this court's subject matter jurisdiction over Plaintiff's claim asserted under the Rehabilitation Act. Ms. Scull counters with two arguments.

<u>First,</u> she relies on decisions from the EEOC's Office of Federal Operations ("OFO") to argue that the Rehabilitation Act is not preempted by the ATSA. Specifically, Plaintiff cites to OFO decisions which, contrary to the persuasive legal authority set forth below, hold that the ATSA does not preempt Rehabilitation Act claims by TSA screeners in at least some situations. [#25 at 6–7]. But as Defendants point out in Reply, this argument has been summarily rejected by courts that have considered it.

For example, in *Field v. Napolitano*, the United States Court of Appeals for the First Circuit ("First Circuit") "reject[ed] this argument" because

> Congress gave the EEOC no role to play in interpreting the ATSA. Instead, Congress vested primary authority for interpreting the ATSA in the TSA Administrator, 49 U.S.C. § 114(d)-(f), granting the Administrator broad flexibility to develop employment standards beyond those articulated in the statute, *id.* § 44935(e)(2)(A).
>
> Nor does the EEOC have any particular expertise in airport security needs. Additionally, the EEOC interpretation is contrary to the statute in that it requires engaging in a case-by-case analysis of whether TSA's decisions are correct under the Rehabilitation Act. Congress did not intend such a result.

663 F.3d 505, 513 (1st Cir. 2011) (internal footnote and citation omitted). And decisions from the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") reject, albeit in other contexts, similar arguments concerning the weight of EEOC decisions. *See, e.g.*, *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011) (noting that the "EEOC's interpretations are not controlling" and "only entitled to our respect to the extent [the interpretations] have the power to persuade," which is lacking if "not consistent with the plain language of [a] statute"); *Dimsdale*

*v. Peters*, 217 F. App'x 743, 746 (10th Cir. 2007) (rejecting argument that a court should follow an EEOC decision).

Moreover, while the Tenth Circuit has not yet addressed this issue, "[e]very circuit to address [it] has agreed that the language of the ATSA precludes security screeners from bringing suit under certain of the federal employment statutes . . . including the Rehabilitation Act." *Field*, 663 F.3d at 512. *Accord Eiler v. McAleenan*, 770 F. App'x 271, 273 (7th Cir. 2019); *Coleman v. Sec'y, Dep't of Homeland Sec.*, 648 F. App'x 128, 129-30 (3d Cir. 2016); *White v. Sec'y, Dep't of Homeland Sec.*, 478 F. App'x 587, 588 (11th Cir. 2012), *cert. denied sub nom. White v. Napolitano*, 133 S. Ct. 649 (2012); *Castro v. Sec'y of Homeland Security*, 472 F.3d 1334 (11th Cir. 2006); *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 (Fed. Cir. 2004) (holding that "notwithstanding" language in the ATSA "renders inapplicable general federal statutes that other would apply" to personnel management of TSA screeners).

Indeed, courts in this District have consistently held that the TSA "is not bound by the Rehabilitation Act when making employment decisions regarding security screeners," because the ATSA vests sole discretion to hire, fire, and set the terms, standards, and conditions of employment for the TSO workforce with the TSA—notwithstanding other federal laws. *Mattson v. Napolitano*, No. 09-cv-02024-PAB-BNB, 2010 WL 11553697, at *1 (D. Colo. Sept. 15, 2010) (dismissing former TSA employee's Rehabilitation Act claims). *See also Hadfield v. United States*, No. 18-cv-03155-MEH, 2019 WL 6038064, at *2 (D. Colo. Nov. 12, 2019) (dismissing former TSA employee's claims for lack of subject matter jurisdiction because "the [ATSA] displaces . . . all other federal personnel statutes or regulations[] as the sole remedy for challenging personnel actions for TSA screeners"); *Baran v. United States*, No. 11-cv-00498, ECF No. 16 at 6 (D.N.M. Nov. 10, 2011) (dismissing TSA employee's putative Rehabilitation Act claim). Given the

foregoing persuasive authority regarding both the degree of deference given to EEOC decisions and the preemptive effect of the ATSA on putative Rehabilitation Act claims against the TSA, I decline Plaintiff's invitation to depart from judicial consensus in favor of non-binding EEOC decisions.

Second, Ms. Scull contends that the TSA waived sovereign immunity in a November 3, 2017 letter sent to Plaintiff. [#25 at 9]. She attaches the letter, sent from the TSA's Reasonable Accommodation Office, to her Response and argues that the letter "proves that TSA was required to offer [her] leave time as a reasonable accommodation, due to the Rehabilitation Act and in accordance with ATSA requirements." [*Id.*]. To the extent Plaintiff argues implicitly that the letter constitutes waiver of sovereign immunity from suit, this argument fails. Neither a government official nor a federal agency has authority to waive sovereign immunity—this waiver authority is exclusively vested in Congress. *See, e.g.*, *Governor of Kansas v. Kempthorne*, 516 F.3d 833, 845 (10th Cir. 2008).[5]

Here, Plaintiff's Rehabilitation Act claims are premised on her employment with the TSA. Because Congress has not waived sovereign immunity to provide Plaintiff with a cause of action under the Rehabilitation Act, and has indeed displaced the Rehabilitation Act and other federal laws as applicable to TSA employees when it enacted the ATSA, this court lacks subject matter jurisdiction over Plaintiff's Rehabilitation Act claims. Accordingly, Defendant's Motion to Dismiss is **GRANTED** and Claims I, II, III, and V are **DISMISSED with prejudice** for lack of subject matter jurisdiction.

---

[5] On Reply, Defendant argues in the alternative that "[e]ven if Congress had waived sovereign immunity for a Rehabilitation Act claim, the TSA letter is not an 'admission' that the Rehabilitation Act applies to Plaintiff." [#26 at 4]. Because this court concludes that Congress has not waived sovereign immunity, it does not reach Defendant's alternative argument.

11

**II.     No Private Right of Action Under Title II of the Family Medical Leave Act**

Defendant argues that Congress has not waived sovereign immunity for claims brought by TSA employees under the FMLA.  Specifically, Defendant argues that (a) Title II governs Plaintiff's FMLA claims because Plaintiff was employed as a federal civil-servant for more than the requisite 12 months contemplated by the statute; and (b) this court lacks subject matter jurisdiction because Title II does not afford Plaintiff a private right of action to challenge the TSA's alleged violations of her rights under the FMLA.  [#18 at 11–12].

*Family Medical Leave Act.*  Pursuant to the FMLA, federal employers must provide their employees with periods of leave from work for certain enumerated circumstances.  Title II of the FMLA, 5 U.S.C. §§ 6381, *et seq.*, governs federal civil-service employees employed for more than one year, whereas Title I, 29 U.S.C. §§ 2601, *et seq.*, governs federal civil-service employees not covered by Title II.  Although Title I and Title II grant the same substantive rights to eligible employees, the latter does not provide a right of action to enforce those substantive rights.  *See Mattson v. Chertoff*, No. 07-cv-2432-PAB-BNB, 2009 WL 564289, at *5 (D. Colo. Mar. 5, 2009); *Berry v. FAA*, No. 05 CV 00779 WYD CBS, 2006 WL 446080, at *2 (D. Colo. Feb. 21, 2006) ("Title I expressly provides a private right of action to remedy violations of the FMLA. . . . Title II does not contain such a provision.") (internal citation omitted).  Accordingly, courts in this District have held that federal civil-service employees are precluded from bringing private causes of action to enforce FMLA rights because Congress has not expressly waived sovereign immunity from suit for claims under Title II.  *See Mattson*, 2009 WL 564289, at *5 ("Because Title II of the FMLA does not expressly waive the government's sovereign immunity, [Plaintiff] is precluded from bringing a private action to enforce FMLA rights."); *Berry*, 2006 WL 446080, at *3 ("[A]s a

Title II employee, Plaintiff may not pursue his claims in this Court, which lacks subject-matter jurisdiction over his complaint.").

*Application.* Defendant seeks dismissal of Claim IV because "the FMLA does not waive the federal government's sovereign immunity and authorize Plaintiff to file suit" as a "Title II employee." [#18 at 11–12]. Specifically, Defendant asserts that Plaintiff was a Title II employee because she was employed as a TSO for 15 months, from August 2016 through November 2017, thereby "complet[ing] at least 12 months of service as an employee," [#18 at 11 (quoting 5 U.S.C. § 6381(1))]. Plaintiff fails to address Defendant's jurisdictional arguments concerning the FMLA in her Response. *See generally* [#25]. Because she "does not to respond to [Defendant's] argument, . . . it is effectively conceded for purposes of this motion." *See Doe v. DiStefano*, No. 18-cv-1462-WJM-KLM, 2019 WL 1254943, at *3 (D. Colo. Mar. 19, 2019).

Thus, I conclude that Plaintiff is a Title II federal civil-service employee for purposes of this action and, as such, lacks a private cause of action against the TSA for alleged violations of the FMLA. This court therefore lacks subject matter jurisdiction over Plaintiff's FMLA claim. Accordingly, Defendant's Motion to Dismiss is **GRANTED** and Claim IV is **DISMISSED with prejudice** for lack of subject matter jurisdiction.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

(1)     Defendant's Motion to Dismiss [#18] is **GRANTED**;

(2)     Plaintiff's Complaint [#1] shall be **DISMISSED with prejudice**;

(3)     Each party will bear its own fees and costs;[6] and

---

[6] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009)

  (4)  The Clerk of the Court shall **TERMINATE** this matter accordingly.

DATED: December 16, 2020      BY THE COURT:

                    _____
                    Nina Y. Wang
                    United States Magistrate Judge

---

(citations omitted). Because the issues presented in this matter were close, and because Plaintiff is proceeding *in forma pauperis* and there is no indication that she brought this action in bad faith, the court declines to award costs. *See Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017) ("[A] district court does not abuse its discretion in denying costs when . . . the non-prevailing party is indigent.").

14